## Orlosky v. City of Reading

C.P. of Berks County, no. 09-11285.

*Jack A. Linton*, for plaintiff.

*Charles D. Younger* and *Stephen C. Richman*, for defendants.

SPRECHER, *J.*, October 20, 2010—Defendants appeal the order dated July 28, 2010, which granted summary judgment in favor of plaintiff and against all defendants. Defendants were ordered to include plaintiff's compensatory time payments in the calculation of plaintiff's pension benefits after the appropriate

deductions were taken.

## FACTS

No trial was held in this matter. The parties filed a Joint Stipulation of Facts. The pertinent facts are as follows.

Defendant, Thomas McMahon, is the mayor of the defendant, City of Reading (Reading), and à member of defendant, City of Reading Fire Pension Board (Fire Pension Board). Defendant, Shelly Fizz, is the pension administrator for Reading. Defendant, Ryan Hottenstein, is currently the managing director for Reading, formerly acting managing director, and formerly finance director. Reading maintains and administers a pension plan for its firemen and related personnel. Plaintiff, Steven Orlosky, was a Reading fireman until his retirement.

On January 9, 2006, and effective January 1, 2006, Reading adopted bill no. 91-2005, the Deferred Retirement Option Program (D.R.O.P.). On January 9, 2006, plaintiff executed the D.R.O.P. Election Program Application, City of Reading Firemen's Pension Plan, and the Reading Firemen's Pension Application for Pension Benefits. On January 20, 2006, Reading advised plaintiff that he had been accepted into the D.R.O.P. effective January 1, 2006, with a monthly pension of $3,139.49 and an annual pension of $37,563.88. On January 1, 2006, the Reading Pension Board Administrator prepared a document entitled Fire Estimated Pension Calculations wherein it provided that plaintiff would receive the aforementioned pension. This document did not contain the inclusion of the value of any compensatory time for time worked by

plaintiff prior to January 1, 2006, for which he had not been compensated as of that date.

Prior to entering the D.R.O.P., plaintiff had accrued 384.75 of compensatory time. Payment for these hours was at the rate of $30.32 per hour for a total of $11,665.62. This money was paid to plaintiff at the time of his retirement on June 30, 2008. No pension contribution deduction was made from this payment.

In 2007 plaintiff requested payment of his compensatory earnings and was advised by a former Managing Director that according to policy, plaintiff would not be entitled to receive his compensatory funds until he actually retired.

Another fireman, Deputy Chief Jeffrey Squibb, was paid for substantially all of his compensatory time without requiring that he wait until his retirement. Deputy Chief Squibb elected to participate in the D.R.O.P. approximately on June 1, 2007, after receiving payment of his compensatory time of $8,409.00, representing 300 hours of compensatory time. All the usual payroll deductions, including pension deductions, were taken out of his earnings.

At a meeting with the mayor, the city solicitor, plaintiff's counsel, and Mr. Hottenstein, it was again reiterated that it was Reading's policy not to pay compensatory time earned until the actual retirement of the employee. On September 21, 2007, plaintiff's counsel wrote a letter to the Human Resources Coordinator/ Pension, requesting that plaintiff's compensatory time be utilized in computing his retirement benefits.

On April 30, 2008, plaintiff advised Reading that he would be retiring on June 20, 2008. On September 4, 2008, Reading advised plaintiff that it was unable to support his request to include the compensatory hours as part of plaintiff's pension. The mayor reiterated this position by letter dated June 25, 2009. On June 17, 2009, the Firemen's Pension Board accepted and agreed to the mayor's response.

The pertinent provision in the City of Reading Codified Ordinances regarding D.R.O.P. reads as follows:

4. Benefit Calculation. For all Retirement Fund purposes, continuous service of a member participating in the D.R.O.P. shall remain as it existed on the effective date of commencement of participation in the D.R.O.P. Service thereafter shall not be recognized or used for the calculation or determination of any benefits payable by the Reading Firemen's Pension Fund. The average monthly pay of the member for pension calculation purposes shall remain as it existed on the effective date of commencement of participating in the D.R.O.P. Earnings or increases in earnings thereafter shall not be recognized or used for the calculation or determination of any benefits payable by the Pension Fund. The pension benefit payable to the members shall increase only as a result of Cost of Living Adjustments in effect on the effective date of the member's participation in the D.R.O.P., or by applicable cost of living adjustments granted thereafter.

Paragraph 2 of the Election Program Application

states:

> (2) As of my DROP date, the calculation of my pension benefit shall freeze and no service rendered or compensation received after my DROP date, unless paid on a retroactive basis, shall be considered for pension and calculation purposes.

Based on these uncontroverted facts, this court entered the aforesaid order. All defendants filed timely appeals.

## ISSUES

Defendants, Shelly Fizz and City of Reading Firemen's Pension Fund, raise the following issues in their concise statement of errors complained of on appeal:

1. This court erred by failing to find that the City of Reading Firemen's Pension Fund properly calculated plaintiff's pension benefit.

2. This court erred by failing to find that the plain meaning of the D.R.O.P. Ordinance, § 1-644(4) expressly excludes any service credit and/or compensation received after a member's entry into the D.R.O.P. from the calculation of that member's pension benefit.

3. This court erred by failing to find that plaintiff indisputably entered into the D.R.O.P. on January 1, 2006, and the fund properly relied on this critical date in calculating plaintiff's benefit, based on his compensation during the twelve months preceding that retirement date regardless of any claim subsequently made for compensatory time.

4. This court erred by failing to find that the D.R.O.P. ordinance specifically provides that "Earnings or increases in earnings thereafter shall not be recognized or used for the calculation or determination of any benefits payable by the pension fund.

5. This court erred by failing to find that plaintiff did not receive any monies related to his compensatory time until more than two years after his retirement, i.e., June 30, 2008, and that said payment was rendered outside the relevant time period for calculating plaintiff's pension benefit.

6. This court erred by failing to consider and apply to this case the legal principle of a "critical moment in time" for purposes of calculating plaintiff's pension benefit.

7. This court erred by failing to consider the Third Class City Code, as it relates to the calculation of pension benefits, to wit: "The basis of the pension of a member shall be determined by the monthly salary of the member at the date of vesting under section 4320.1 or retirement," (53 P.S. § 39322(a)), which under the D.R.O.P. is the date upon which a participant enters the program.

8. This court erred by failing to recognize as set forth in plaintiff's D.R.O.P. application that upon his entry in the D.R.O.P. program, he no longer made any pension contributions to the City of Reading Firemen's Pension Fund and that it would be inherently unfair to provide him with an increased pension benefit based upon compensation received subsequent to his entry into the D.R.O.P. program for which no contributions were paid

into the City of Reading's Pension Fund.

9. This court erred by failing to find that plaintiff was not treated in an unfair or discriminatory manner, and that any reliance upon the pension calculation of Deputy Chief Jeffrey Squibb is misplaced.

Defendants, city, mayor, and Ryan Hottenstein, raise the following two issues:

1. This court erred by granting plaintiff's motion for summary judgment.

2. Did defendants, city, mayor, and Ryan Hottenstein, properly interpret the D.R.O.P. ordinance and not include unpaid compensatory time in plaintiff's pension benefit calculation?

## DISCUSSION

This court shall address the issues collectively because they all concern the interpretation of the D.R.O.P. This court agrees with defendants that §1-644(4) expressly excludes any service credit and/or compensation received after a member's entry into the D.R.O.P. from the calculation of that member's pension benefit. This court also agrees that the critical date in calculating plaintiff's pension fund is January 1, 2006.

This court, however, found that the issue of payment of the earnings is not a deciding factor in the pension calculation. *Black's Law Dictionary,* 8th Ed. (2004), defines earnings as revenue *gained* (emphasis added) from labor or services, from the investment of capital, or from assets. In the case sub judice plaintiff *gained*

his earnings from labor. Earnings are paid for past labor. There is no dispute that plaintiff performed the labor prior to the critical date of January 1, 2006. Therefore, plaintiff was owed the earnings at the time that he entered the D.R.O.P.

Defendants' attempt to rely on the fact that plaintiff did not request the payment of his earnings prior to his enrollment in the D.R.O.P. is disingenuous and without merit. Each time that plaintiff had requested his compensatory earnings he had been told that he could not receive the earnings until his date of retirement. Thus, even if he had asked for the earnings prior to his enrollment in the D.R.O.P., he would not have received them.

Plaintiff is not an attorney. He did not receive a copy of the D.R.O.P. ordinance. He did receive the D.R.O.P. election program application that states in Paragraph 2 that the calculation of his benefit freezes and no service rendered or compensation received after his D.R.O.P. date, unless on a retroactive basis, shall be considered for pension purposes. The clear meaning of this provision is that on the date that a person enters the program, the person's benefits freeze and their future earnings are not calculated into the pension benefit. However, any earnings that are made prior to the entry into the D.R.O.P. would be used to calculate the benefit, including those earnings paid on a retroactive basis for past services.

Defendants attempt to base plaintiff's benefit on the payment of his earnings, not the service for those earnings. However, plaintiff's pension is based on his earnings history, not the payment history of those earnings. This

is the plain meaning of the provision. Furthermore, if the pension were based on payment history, any earnings that were owed to a participant but were not paid until after the enrollment in the program would not be calculated in the benefit. Many participants would lose credit for their earnings immediately preceding their election.

Paragraph 4 of the D.R.O.P. Ordinance is the benefit calculation provision which clearly states that for all retirement fund purposes, continuous service of a member participant in the D.R.O.P. shall remain as it existed on the effective date of commencement of participation in the D.R.O.P. Service thereafter shall not be recognized or used for the calculation or determination of any benefits. Thus, this provision dictates that the pension is based on past service, not future service. The average monthly pay for pension calculation purposes shall remain as it existed on the effective date of participation. Earnings or increases in earnings thereafter shall not be recognized or used for determination of any benefits.

Plaintiff's compensatory time was earned prior to his election to participate in the D.R.O.P. It should have been included in his average monthly pay as Deputy Squibbs' compensatory time had been. It was not earnings that had accrued after plaintiff's election in the D.R.O.P. Plaintiff is not contending that his earnings between January 1, 2006, and June 2008 be included. He is just requesting that the calculation of his pension include the over-time compensation that he had earned prior to his date of election. Therefore, this court granted plaintiff's motion for summary judgment.

470

Defendants knew that plaintiff was owed earnings for compensatory time. Defendants deducted taxes and other amounts from those earnings. Plaintiff did not prohibit defendants from taking pension deductions from the earnings. Defendants chose not to do so. To put plaintiff on an equal basis with the other participants, this court ordered that the pension deductions be included in the revised pension benefit.

It is also uncontroverted that defendants paid Chief Deputy Squibb for his compensatory earnings prior to his retirement and those earnings were included in his pension benefit. This court believes that defendants are equitably estopped from denying the inclusion of the compensatory time in plaintiff's pension calculation since to do so would create a disparate treatment of the two. Plaintiff's reliance on the incorrect position was to his detriment because defendants excluded his earnings from the calculation of his pension.

In accordance with the foregoing opinion, this court submits that its order should be affirmed and defendants' appeals dismissed.